## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| TROPICANA ENTERTAINMENT, LLC, | : | Case No. 08-10856 (KJC) |
| *et al.*,[1] | : | |
| Reorganized Debtors | : | (Re: D.I. 3845, 3846) |

## MEMORANDUM AND ORDER
## ADDRESSING REMAINING PROFESSIONAL FEE ISSUES[2]

The Liquidating LandCo Debtors and Tropicana Las Vegas, Inc. (collectively, the

"LandCo Debtors" or "LandCo") and the Steering Committee of Lenders to the OpCo Debtors

(the "Steering Committee") objected to the Final Fee Applications filed by professional firms

employed by the Debtors and the Official Committee of Unsecured Creditors (the "Creditors

---

[1] The "Reorganized OpCo Debtors" are: Adamar Garage Corporation; Argosy of Louisiana, Inc.; Atlantic-Deauville, Inc.; Aztar Corporation; Aztar Development Corporation; Aztar Indiana Gaming Company, LLC; Aztar Indiana Gaming Corporation; Aztar Missouri Gaming Corporation; Aztar Riverboat Holding Company, LLC; Catfish Queen Partnership in Commendam; Centroplex Centre Convention Hotel, L.L.C.; Columbia Properties Laughlin, LLC; Columbia Properties Tahoe, LLC; Columbia Properties Vicksburg, LLC; CP Baton Rouge Casino, LLC; CP Laughlin Realty, LLC; Hotel Ramada of Nevada Corporation; Jazz Enterprises, Inc.; JMBS Casino LLC; Ramada New Jersey Holdings Corporation; Ramada New Jersey, Inc.; St. Louis Riverboat Entertainment, Inc.; Tahoe Horizon, LLC; Tropicana Entertainment Holdings, LLC; Tropicana Entertainment Intermediate Holdings, LLC; Tropicana Entertainment, LLC; Tropicana Express, Inc.; and Tropicana Finance Corp. (the "OpCo Debtors" or "OpCo").

The "Liquidating LandCo Debtors" are: Adamar of Nevada Corporation; Hotel Ramada of Nevada Corporation; Tropicana Development Company, LLC; Tropicana Enterprises; Tropicana Las Vegas Holdings, LLC; Tropicana Las Vegas Resort and Casino, LLC; and Tropicana Real Estate Company, LLC (the "LandCo Debtors," and, together with the OpCo Debtors, the "Debtors").

[2] This Memorandum constitutes the findings of fact and conclusions of law, required by Fed.R.Bankr.P. 7052. This Court has jurisdiction pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

Committee") in the chapter 11 bankruptcy cases.[3]  On December 30, 2014, I issued the Memorandum Regarding Fee Allocation Dispute (D.I. 3845) and the Order Regarding Fee Allocation Dispute (D.I. 3846) (together, the "Allocation Decision").   In the Allocation Decision, I determined that the professional fees incurred through June 30, 2009 should be allocated 75% to the OpCo Debtors and 25% to the LandCo Debtors.[4]  As directed by the Order Regarding Fee Allocation Dispute, the parties filed a disappointingly long Joint List of Unresolved Issues Related to Pending Fee Objections on January 23, 2015 (D.I. 3851).  After a hearing on February 3, 2015, the parties participated in mediation regarding the unresolved issues, which was, in retrospect, predictably unsuccessful.  After a status hearing on June 9, 2015, the parties submitted letter briefs stating their conflicting positions on the remaining unresolved issues.[5]

The parties' disparate positions in the letter briefs show, in part, disagreement over the scope of the Allocation Decision.  The LandCo Debtors argue that the Allocation Decision is limited and applies only to those professional fees that were *unpaid* as of the effective date of the LandCo Debtors' plan (or June 30, 2009) (the "Effective Date"). The OpCo Debtors argue that the Allocation Decision applies to *all* professional fees incurred during the chapter 11 cases and,

---

[3]The professional firms employed by the Debtors are: Kirkland & Ellis, LLP; AlixPartners, LLP; Ernst & Young, LLP; KPMG LLP; Lazard Freres & Co., LLC; Paul, Hastings, Janofsky & Walker LLP; and Richards, Layton & Finger, P.A. (the "Debtor Professionals").  The professional firms employed by the Creditors Committee are: Capstone Advisory Group, LLC; Lionel, Sawyer & Collins; Stroock & Stroock & Lavan LLP; and Morris, Nichols, Arsht & Tunnell, LLP (the "Committee Professionals").    The objections included the final fee application of Warren H. Smith & Associates, P.C. (the "Fee Auditor").  Together, the Debtor Professionals, the Committee Professionals, and the Fee Auditor are referred to herein as the "Professionals."

[4] As noted in the Allocation Decision, the 75/25 allocation does not apply to the Completion Fee of Lazard Freres & Co.

[5] The letter briefs are found at docket numbers 3906, 3907, 3908, 3909, 3910, 3911, and 3912.

2

further, requires the LandCo Debtors to reimburse the OpCo Debtors for LandCo's share of the fees that were already paid as of the Effective Date.

I write now to clarify that the 75/25 split of professional fees in the Allocation Decision is limited to the issues arising in connection with the Professional Fee Escrow Account contained in the LandCo Debtors' confirmed plan or, more specifically, the professional fees that were *unpaid* as of the Effective Date. The remaining question of whether the OpCo Debtors hold a valid administrative claim against the LandCo Debtors for reimbursement of a share of the professional fees that were paid during the chapter 11 cases was not determined in the Allocation Decision. After review and consideration of the parties' letter briefs, I now address this issue.

Background of the OpCo Debtors' Intercompany Claim for Professional Fees

On May 5, 2009, both OpCo and LandCo achieved confirmation of their respective chapter 11 plans.[6] The LandCo Plan established a Professional Fee Escrow Account (the "Escrow Account") to pay all allowed *and unpaid* fees and expenses of the Professionals in their chapter 11 cases.[7] The LandCo Plan required the amount of the Escrow Account to be equal to the Professional Fee Reserve Amount (the "Reserve"), which was defined as "the portion of Accrued Professional Compensation through the Effective Date allocated to the LandCo Debtors and not allocated to the OpCo Debtors based on the estimates of such Accrued Professional Compensation . . . ."[8]

---

[6] The First Amended Joint Plan of Reorganization of Tropicana Las Vegas Holdings, LLC and Certain of its Debtor Affiliates under Chapter 11 of the Bankruptcy Code (D.I. 2002-1) (the "LandCo Plan") and the First Amended Joint Plan of Reorganization of Tropicana Entertainment, LLC and Certain of its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code (D.I. 2001-1) (the "OpCo Plan').

[7] The LandCo Plan, I.A.139 (emphasis added).

[8] The LandCo Plan, I.A.140. The LandCo Plan also defined "Accrued Professional Compensation" as "at any given moment, all accrued fees and expenses (including success fees) for services rendered by

Both the LandCo Plan and the OpCo Plan provided that no distributions would be made
on Intercompany Claims.[9]  However, on July 1, 2009, the Debtors entered into an agreement to
address "Unresolved Claims" between OpCo and LandCo (the "Intercompany Agreement"),
which defined "Unresolved Claims" as:

> [O]ne or more unresolved and unreconciled Intercompany Claims for goods or
> services provided or other acts or omissions occurring during the period from the
> Petition Date through the Effective Date of the LandCo Plan . . . . For the avoidance
> of doubt, Unresolved Claims shall include, without limitation, Intercompany
> Claims relating to workers compensation claims, including costs and expenses
> related to claim activity or third party administrator loss reserve funding
> requirements.[10]

The Intercompany Agreement set up a reconciliation process for the Unresolved Claims.
The first step required the OpCo Debtors to provide the LandCo Debtors with a statement of
Unresolved Claims, including supporting documentation, within thirty days after the LandCo
Plan's Effective Date (the "Intercompany Claims Statement").[11]  Then, the LandCo Debtors had
thirty days to review the Intercompany Claims Statement and notify the OpCo Debtors of any
dispute or demand for more information (the "Review Period").  At the end of the Review
Period, the LandCo Debtors would pay undisputed Unresolved Claims, and the parties agreed to

---

all Professionals through and including the Effective Date in respect of services rendered and expenses
incurred on behalf of the LandCo Estates, *to the extent such fees and expenses have not been paid* and
regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a
Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer
be considered Accrued Professional Compensation." (LandCo Plan, I.A.1 (emphasis added).)

[9] "Intercompany Claim" is defined in the LandCo Plan as "a Claim by a Debtor against another
Debtor, at least one of which Debtors is a LandCo Debtor." Similarly, "Intercompany Claim" is defined in
the OpCo Plan as "a Claim by a Debtor against another Debtor, at least one of which Debtors is an OpCo
Debtor."

[10] *See* The Intercompany Agreement dated July 1, 2009 between and among the Debtors, ¶E.
(D.I. 3853, Ex. A.)

[11] On July 29, 2009, the parties amended the Intercompany Agreement to extend the time for OpCo
to deliver the Intercompany Claims Statement from 30 days to 45 days.

"negotiate in good faith" over disputed Unresolved Claims.  Thereafter:

> If the parties are unable to reach a resolution with respect to an Unresolved Claim within thirty (30) days after receipt of a Dispute Notice, either party may submit the dispute for adjudication by the Bankruptcy Court.  The parties agree that the Bankruptcy Court may resolve such dispute pursuant to a motion brought on regular notice.[12]

On August 14, 2009, OpCo delivered the Intercompany Claims Statement to LandCo

which included three sections covering (i) Unresolved Claims (e.g., 401K remittances; United

States Trustee fees), (ii) Professional Fees, and (iii) Unasserted Workers' Compensation

Claims.[13]  The claim for Professional Fees stated:

> In an abundance of caution, the OpCo Debtors assert Unresolved Claims held by the OpCo debtors against the LandCo Debtors (to be paid by the Liquidating LandCo Debtors or New LandCo) on account of fees and expenses paid by the OpCo Debtors to professionals retained in the chapter 11 cases of the OpCo Debtors and the LandCo Debtors that are allocable to the LandCo Debtors.  Such amounts are to be asserted by such professionals in final fee applications to be filed in the chapter 11 cases in accordance with the LandCo Plan and otherwise in compliance with the Bankruptcy Code and applicable guidelines and orders, and such amounts are expected to be ordered by the Bankruptcy Court.  Given that the allocation of such fees and expenses between the OpCo Debtors and the LandCo Debtors has not been resolved, the OpCo Debtors are unable to assert a liquidated amount.  Reference is made to e-mail correspondence from Marc Carmel to James Johnston on July 30, 2009 as well as correspondence sent from Marc Carmel to James Johnston on June 26 and 30, 2009 with charts that provided estimates of the total amount of fees and expenses as well as estimated allocations of these amounts between the OpCo Debtors and the LandCo Debtors, all subject to the final fee application process.

The LandCo Debtors filed a Dispute Notice in response to the Intercompany Claims

Statement stating the following with respect to the OpCo's claim for Professional Fees:

> By Claim 2 of the Intercompany Claims Statement, the OpCo Debtors assert an unliquidated claim "on account of fees and expenses paid by the OpCo Debtors to professionals retained in the chapter 11 cases of the OpCo Debtors and the LandCo Debtors that are allocable to the LandCo Debtors."

---

[12] Intercompany Agreement, ¶3.d

[13] A copy of the Intercompany Claims Statement is attached as Exhibit E to the LandCo Debtors' letter to the Court dated February 2, 2015 (D.I. 3857).

The Liquidating LandCo Debtors object to this claim in its entirety. First, as stated in the Intercompany Claims Statement, no professional fees have yet been allocated to the LandCo Debtors, and all applicable professional fees remain subject to allowance and allocation by the Bankruptcy Court. Accordingly, this claim currently is contingent, unliquidated, and disputed. Second, the Liquidating LandCo Debtors have no liability or obligations in respect of this claim. Third, this claim has been barred and discharged by the LandCo Plan and the OpCo Debtors are enjoined from asserting it.

The Liquidating LandCo Debtors reserve all rights in respect of this claim.[14]

The LandCo Debtors and the Steering Committee filed objections to the Professionals' final fee applications. A scheduling order entered in connection with those objections bifurcated the issues and set discovery and hearing schedules for the Allocation Dispute (defined therein as "litigation relating to the allocation of fees and expenses between the OpCo Debtors and the LandCo Debtors") and the Remaining Objections (defined therein as "litigation relating to the reasonableness objections, the Lazard Completion Fee objection and the Kirkland malpractice and conspiracy objection.").[15]

At the hearing on the Allocation Dispute, the parties voiced opposing views about whether the Allocation Dispute included the issues arising from OpCo's Intercompany Claim for the Professional Fees.[16] LandCo argued that the Allocation Dispute (as part of the final fee application objections) was intended to determine the amount LandCo must pay from the Professional Fee Escrow Account, which is limited by the LandCo Plan to professional fees and

---

[14] A copy of the LandCo Dispute Notice is attached as Exhibit F to the LandCo Debtors' letter to the Court dated February 2, 2015 (D.I. 3857).

[15] A copy of the Second Amended Order Setting a Discovery and Hearing Schedule for the Final Fee Applications (D.I. 3394) is attached as Exhibit I to the LandCo Debtors' letter to the Court dated February 2, 2015 (D.I. 3857).

[16] The parties also, at various times, refer to OpCo's Intercompany Claim for Professional Fees as OpCo's "Administrative Claim."

expenses that *had not been paid* as of the Effective Date. LandCo also argued that OpCo's

Intercompany Claim for Professional Fees needed to be "teed up" by a separate motion. OpCo,

however, argued that the Allocation Dispute was intended to determine LandCo's share of *all*

professional fees during the chapter 11 case - - whether paid or unpaid as of the plan's Effective

Date. At the hearing on the Allocation Dispute, I was of the view that OpCo's request for

administrative claim status should be teed up separately.[17]

The letter briefs filed on January 29, 2015 and February 2, 2015 (in connection with the

parties' Joint List of Unresolved Issues Related to Pending Fee Objections), and the letter briefs

filed in June 2015 have provided me with a sufficient record, including copies of the relevant

documents. I see no benefit to anyone in prolonging this troublesome dispute and conclude that

OpCo's Intercompany Claim for Professional Fees is ripe for decision.[18]

Discussion

The LandCo Plan established the Professional Fee Escrow Account and required the

LandCo Debtors to put funds aside to pay its share of the unpaid professional fees on the

Effective Date, which included the 20% fee "holdback" of the Professionals that remained

unpaid at that time. The LandCo Debtors' Disclosure Statement projected "Restructuring

---

[17] Tr. 5/11/11 (D.I. 3456) at 121:10-17.

[18] "The ripeness doctrine determines 'whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'" *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009). There are two fundamental considerations to determine ripeness: (1) the fitness of the issues for a judicial decision, and (2) the hardship to the parties of withholding court consideration. *Abbott Labs v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). It is not premature to decide OpCo's Intercompany Claim for Professional Fees. The question is a concrete, primarily legal, issue, and withholding consideration will cause further hardship to the parties and unnecessarily and unhelpfully add more "process" to what is an already laborious process.

Charges" of $2.7 million, explaining:

> Management estimates that the LandCo Debtors will incur approximately
> $2.7 million of restructuring charges in 2009. These expenses represent the
> Professional fees relating to the Chapter 11 cases. Professional fees were projected
> by examining the run-rate for professionals billing at hourly and fixed-rates and
> account for success fees.[19]

The Disclosure Statement did not project any Restructuring Charges for the second half of 2009,

after the LandCo Plan's Effective Date.[20]  In contrast, the OpCo Disclosure Statement projected

Restructuring Charges of $43.2 million and $5.1 million for the same periods, respectively,

consisting of "primarily Professional fees relating to the Chapter 11 Cases, but also includ[ing]

an estimate for certain compensation of the OpCo Debtors' management upon emergence."[21]

The LandCo Plan and the OpCo Plan both provide that no distributions would be made

on Intercompany Claims.[22]  Despite this, the parties entered into the Intercompany Agreement

post-confirmation, to handle the "Unresolved Claims," which were defined as including "*without*

*limitation,* Intercompany Claims relating to workers compensation claims, including costs and

expenses related to claim activity or third party administrator loss reserve funding

requirements."[23]  Following the procedure in the Intercompany Agreement, the OpCo Debtors

provided the LandCo Debtors with an Intercompany Claims Statement that included a claim for a

share of the professional fees paid during the Chapter 11 Cases.

---

[19] LandCo Debtors' Disclosure Statement (D.I. 1738), Ex. C.

[20] *Id.*

[21] OpCo Debtors' Disclosure Statement (D.I. 1742), Ex. C.

[22] LandCo Plan (D.I. 2002-1), III.B.7.; OpCo Plan (D.I. 2001-1), III.B.10. The OpCo Debtors, however, reserved the right to reinstate Intercompany Claims by any OpCo Debtor against another OpCo Debtor.

[23] Intercompany Agreement, ¶E (emphasis added).

The LandCo Debtors assert that a review of the approved Disclosure Statement shows that the parties never intended that the LandCo Debtors would have any liability for professional fees above the amount escrowed for unpaid fees under the LandCo Plan, arguing:

> Had it [the LandCo Debtors] faced potential liability of $11.3 million as Tropicana Entertainment now asserts, Tropicana Las Vegas would have been cash flow insolvent (or very nearly so) on the LandCo Plan effective date and the Court could not have found the LandCo Plan to be feasible. This is why the Professional Fee Escrow Account was created. There was a concern among parties in interest that, without an escrow (an unusual concept for a plan of reorganization), Tropicana Las Vegas might be unable even to pay its allocated share of the unpaid professional fees. Margins were that tight.
>
> In fact, Tropicana Las Vegas was in such perilous financial condition that the LandCo Plan included a "Rights Offering" to raise up to $75 million for "general corporate purposes." The Disclosure Statement for the LandCo Plan warned that failure to raise all $75 million as contemplated "may materially and adversely affect New LandCo's ability to operate their businesses on a going forward basis." [24]

My review of the plan documents, and my experience with the events in the Chapter 11 Cases, lead me to conclude that the OpCo Debtors' inclusion of a claim for Professional Fees under the post-confirmation Intercompany Agreement is overreaching, inequitable and inconsistent with the confirmed Plans. The definition of Unresolved Claims in the Intercompany Agreement may include the "without limitation" language, but there is no reason to allow the OpCo Debtors to drive a truck through the small back door that they argue the LandCo Debtors left open.

Accordingly, the only remaining issues are the Reasonableness Objections. A status hearing will be held on **Wednesday, January 20, 2016 at 3 p.m.** in Courtroom No. 5, United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, DE 19801 to consider the parties' pre-hearing needs, if any, in connection with the Reasonableness Objections. In the post-Allocation Decision letter briefs, the parties assert that further discovery

---

[24] Feb. 2, 2015 letter (D.I. 3857), pp. 3-4 (footnotes omitted).

is needed before the Court can determine the Reasonableness Objections. Although I am disinclined to prolong this matter further, I will hear the parties' arguments in favor of (or in opposition to) scheduling a short period for limited discovery in connection with the Reasonableness Objections.   Any party wishing to do so may submit a position paper in letter form (no longer than two pages) by **Friday, January 15, 2016** at 4:00 p.m. (ET).

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated:  January 5, 2016

cc: Mark D. Collins, Esquire[25]

---

[25]Counsel shall serve a copy of this Memorandum and Order upon all interested parties and file a Certificate of Service with the Court.